# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **MARQUEZ B. PERRY,** | CASE NO. 3:22 CV 688 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **HAROLD MAY, et al.,** | |
| | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

## INTRODUCTION

Currently pending before the Court in this civil rights action are several motions from *pro se* Plaintiff Marquez B. Perry. For the reasons discussed below, the Court finds Plaintiff's Amended Complaint (Doc. 12-1) properly filed, denies Plaintiff's request for appointment of counsel (Doc. 13), and denies Plaintiff's motions for a temporary restraining order or emergency injunction (Docs. 14, 21).

## BACKGROUND

Plaintiff is a state prisoner who at the time of filing the instant case in April 2022 was housed at the Toledo Correctional Institution ("TCI"). *See* Doc. 1. In May 2022, Plaintiff was transferred to the Southern Ohio Correctional Facility ("SOCF") and remains incarcerated there. *See* Doc. 12-1, at 43, 60-61.

Plaintiff originally filed his Complaint in this case in April 2022 alleging an Eighth Amendment failure-to-protect / deliberate indifference claim under 42 U.S.C. § 1983 against the

Warden and various correctional officials at TCI.[1] (Doc. 1, at 1, 3). Plaintiff alleged he was previously raped by a gang member and that he suffered repeated assaults ordered by gang members for reporting the rape. *Id.* at 3-9. He alleged that he and his rapist were housed at the TCI despite having an "institutional separation" order. *Id.* at 4, 5. Plaintiff told the Warden he feared violence, but the Warden took no action. *Id.* at 4. He alleges he has been assaulted "several times" since being at Toledo Correctional. *Id.* at 5. He describes assaults in July, August, September, and October 2021, as well as being extorted for payment from gang members. *Id.* at 6, 13, 14, 17. Plaintiff asserts he has requested transfer to protective custody from general population three times and each time it has been denied. *Id.* at 6-7. He asserts "gang members have repeatedly harassed and threatened [him] for reporting [his] assaults." *Id.* at 6. He contends he told the Warden and other prison officials of this danger, but they did not take steps to address it. *Id.* at 7-18. He seeks monetary relief, as well as injunctive relief in the form of, *inter alia*, placement in protective custody. *Id.* at 19.

In his proposed Amended Complaint filed in December 2022, Plaintiff continues to assert, *inter alia*, Eighth Amendment violations based on the alleged 2021 assaults at TCI and the denial of his requests for protective custody. *See* Doc. 12-1. The Amended Complaint also seeks to add additional similar claims against new Defendants: the Deputy Warden of Operations at SOCF, Cynthia Davis, as well as Jane Does #1-#3, and John Does #2-#3. *Id.* at 2, 27-35, 38. Specifically, as relevant to the pending motions, the Amended Complaint (and Declaration attached thereto) asserts in August 2021, September 2021, and February 2022, Plaintiff appealed the denials of his

---

1. These named officials are Warden Harold May, UMC Robinson; Sgt. (or Lt.) Paisley; CO Beck, Ms. Mendoza, Inspector Jenkings, DWO Hobbs, Major Brown, Investigator Brown, UM Mrs. Abbott, PREA Coordinator John Doe. *See* Doc. 1, at 1, 3.

protective custody requests to Defendants Jane Does #1-#3[2] of the Bureau of Classification respectively. *Id.* at 27-31. He asserts he told Jane Doe #1 he "had been assaulted several times". *Id.* at 27. He says he told Jane Doe #2 he "suffered several assaults since his first P.C. hearing and explain[ed] that he was in danger of more assaults". *Id.* at 28. And he asserts he informed Jane Doe #3 "of his many physical and sexual assaults", "the many retaliational [sic] assaults by gang members for his alleged rape" and that he "would be in danger of more assaults". *Id.* at 30. He asserts he told each Jane Doe Defendant "that he was incarcerated under conditions that pose a substantial risk to his health and safety", and he was assaulted after the denials of his appeals. *Id.* at 27, 28, 31.

Plaintiff further asserts new claims against John Does #2 and #3 "of the P.C. Committee". *Id.* at 32. He alleges in July 2021 he provided these individuals "with the facts surrounding 3 separate assaults of which all 3 of the assailants were found guilty" and "explained the dangers he was in being in [general population] and explained that he was incarcerated under conditions that pose a substantial risk to his health and safety." *Id.* He also asserts he again applied for protective custody in September and February 2021 and provided "several details about his assaults and all the medial injuries and all the retaliation . . . and how he would be in danger of future assaults". *Id.* at 34. He again asserts he was assaulted after the denials of his protective custody requests. *Id.* at 33-35.

Finally, Plaintiff asserts new claims against Deputy Warden of Operations Cynthia Davis. *Id.* at 38. He says he told Davis in October 2020, February 2021, and May 2022 "about all the

---

2. In a later filing, Plaintiff identifies Jane Doe #1 as "Mrs. E. Sheppard of Bureau of Classification" and Jane Doe #2 and #3 as "Mrs. K. Hupka of Bureau of Classification." (Doc. 22).

assaults he has suffered and about all the threats and extortion attempts" and that he was "incarcerated under conditions posing a substantial risk to [his] health and safety". *Id.*

In the proposed Amended Complaint, Plaintiff continues to seek monetary relief as well as injunctive relief ordering him placed in protective custody. (Doc. 12-1, at 39).

## DISCUSSION

Motions to Amend (Doc. 12, 23)

Plaintiff filed his original Complaint in this case in April 2022. (Doc. 1). The Complaint was served on Defendants on November 18, 2022. *See* Doc. 11.

On December 9, 2022, Defendants filed a Motion to Dismiss. (Doc. 10). Also on December 9, 2022, Plaintiff mailed his Motion to Amend Complaint (Doc. 12), including a proposed Amended Complaint (Doc. 12-1). *See* Doc. 12-2 (postmark dated December 9, 2022); *see also* Doc. 12-1, at 39 (certificate of service stating Amended Complaint placed in the mail on November 24, 2022).

Although captioned as a motion to amend (Doc. 12), and addressed by Defendants as such in opposition (Doc. 17), the Court finds Plaintiff's amendment falls under Federal Civil Rule 15(a)(1) rather than 15(a)(2).

Federal Civil Rule 15 provides:

(a) Amendments Before Trial.

> (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:
>
> > (A) 21 days after serving it, or
> >
> > (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

4

> (2) *Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a).

Under the prison mailbox rule, a *pro se* prisoner's pleading "is deemed filed when the inmate gives the document to prison officials to be mailed." *In re: Prison Litig. Reform Act*, 105 F.3d 1131, 1132 (6th Cir. 1997) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)). Plaintiff's proposed Amended Complaint was filed no later than December 9, 2022. *See* Doc. 12-2. This is exactly "21 days after serving [the original complaint]". Fed. R. Civ. P. 15(a)(1)(A). Alternatively, as the proposed Amended Complaint was filed on the same date as Defendants' Motion to Dismiss, it could fall within subsection (B) of Rule 15(a)(1). *See* Fed. Civ. R. 15(a)(1)(B) ("21 days after service of a motion under Rule 12"). Thus, the Court finds Plaintiff's Amended Complaint to be a "once as a matter of course" amendment under Rule 15(a)(1) and deems the Amended Complaint filed.[3]

Because the Court's leave was not required to file the Amended Complaint, Plaintiff's motions for leave to file that pleading (Docs. 12, 23) are denied as moot. Defendants' motion to dismiss the original complaint (Doc. 10) and Plaintiff's motion for an extension of time to file an opposition thereto (Doc. 16) are also denied as moot. Defendants may certainly re-raise any arguments made in opposition to amendment and in their previous motion to dismiss in response to the Amended Complaint should they deem it appropriate.

---

3. The Court notes Plaintiff did not submit summonses with which to serve the newly-named Defendants.

5

Motion for Appointment of Counsel (Doc. 13)

Plaintiff also filed a Motion for Appointment of Counsel (Doc. 13). Defendants opposed (Doc. 18), and Plaintiff replied (Doc. 25). Plaintiff argues the Court should appoint him counsel because (1) he has a separate civil case proceeding to trial in the United States District Court for the Southern District of Ohio, and (2) he has limited legal knowledge. *See* Doc. 13.

A district court has the discretion to appoint counsel under 28 U.S.C. § 1915(d) but there is no statutory right to appointed counsel in a civil action. *Glover v. Johnson*, 75 F.3d 264, 268 (6th Cir. 1996). Nor is there a constitutional right to appointed counsel in civil cases. *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993). The appointment of counsel in civil actions is a "privilege that is justified only by exceptional circumstances." *Id.* at 606. In evaluating whether appointment of counsel is warranted, "courts generally examine the nature of the case, the plaintiff's ability to prosecute the case in a *pro se* capacity, and 'the complexity of the factual and legal issues involved.'" *Shavers v. Bergh*, 516 F. App'x 568, 571 (6th Cir. 2013) (quoting *Lavado*, 992 F.2d at 606).

The Court finds no exceptional circumstances justifying the appointment of counsel at the present time. First, this case does not appear so factually or legally complex as to necessitate the appointment of counsel. Plaintiff presents Eighth Amendment deliberate indifference and failure to protect claims under 42 U.S.C. § 1983. These claims do not appear to involve any novel legal arguments. *See, e.g.*, *Redd v. Conway*, 160 F. App'x, 858, 863 (11th Cir. 2005) (district court did not abuse its discretion in refusing to appoint counsel where issues raised in prisoner's § 1983 excessive force and deliberate indifference action were not too novel or complex for prisoner to represent himself).

6

Second, Plaintiff has, in his filings, demonstrated his ability to clearly set forth the facts and relevant legal standards applicable to his claims.

Third, as another district court explained: "[m]ost pro se litigants believe that their cases are complex, and all prisoners find that their access to law libraries is limited." *Balcar v. Smith*, 2017 WL 6347963, at *2 (W.D. Ky.) (quoting *Knowles-Browder v. Ca. Forensic Med. Group Staff*, 2006 WL 927255, at *1 (E.D. Cal.)); *see also Keel v. Ray*, 2011 WL 3501688, at *3 (M.D. Tenn.) (finding circumstances such as limited law library access and limited legal knowledge to be "typical to many prisoners and do not suggest anything exceptional in nature."). The same is true here.

Finally, as Respondent points out, Plaintiff's motion for appointed counsel to assist him at trial in his Southern District of Ohio case has been granted, and as such, the burden of pursuing both cases simultaneously is not as great as Plaintiff asserts. *See Perry v. Warden, Warren Corr. Inst.*, No. 20 CV 30 (S.D. Ohio) (Doc. 142) (December 13, 2022 order granting motion for appointment of counsel).

Plaintiff's motion for appointment of counsel (Doc. 13) is denied. Should the case proceed to trial, Plaintiff may renew the motion.

Motions for TRO (Docs. 14, 21)

At the same time he filed his motion to amend, Plaintiff filed a Motion for a Temporary Restraining Order. (Doc. 14). Therein Plaintiff requests a court order "prohibiting the O.D.R.C. or its employees from housing him in general population until this case and several of the issues are resolved". *Id.* at 1. He specifically asks the Court to order "the State of Ohio, ODRC, Jane Does #1-#3, Cynthia Davis, and all defendant[s]" to place him in protective custody. *Id.* at 3. He asserts he has "constantly been assaulted and beaten very badly" for the past three years and that he has

7

suffered mental health "breakdowns" as well. *Id.* at 2. He contends he "is still under danger of further being assaulted by gang members in retaliation for reporting his rape" and that this "threat poses a serious threat to [his] life and safety". *Id.* He references the "very serious medical injuries suffered . . . as described in his affidavit and grievances." *Id.*

Defendants opposed (Doc. 15), contending (1) the Court lacks personal jurisdiction over the State of Ohio and the Ohio Department of Rehabilitation and Correction; (2) the motion sought injunctive relief against individuals who are not parties but rather proposed defendants in the Amended Complaint; and (3) "[n]one of the named and served defendants to this action have any authority or participation as to the conduct of prison officials within SOCF, which is outside the geographical jurisdiction of the Northern District of Ohio". *See id.* at 1-2. Defendants further contended (again, citing only Plaintiff's original complaint) Plaintiff could not satisfy the standard for injunctive relief. *See id.* at 4-6. Plaintiff filed a Reply. (Doc. 19). Plaintiff subsequently filed a second Motion for Temporary Restraining Order. (Doc. 21). Therein, Plaintiff seeks an order that he not be housed in the same prison as his alleged rapist, from whom he has an institutional separation order, and who he asserts is also now at SOCF. *Id.* at 1. He asserts he was in medical in a small room together with his rapist on December 30, 2022 and saw the man walk past him in the hallway on January 3, 2023; he contends both instances caused him fear. *Id.* at 2-3.

Federal Rule of Civil Procedure 65 governs the proper procedures and requirements for the issuance of injunctions and temporary restraining orders. The purpose of a TRO is "to preserve the status quo so that a reasoned resolution of a dispute may be had." *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226 (6th Cir. 1996). The same standard generally applies to temporary restraining orders and preliminary injunctions. *Ohio Republican Party v. Brunner*, 543 F.3d 357,

8

361 (6th Cir. 2008); *Northeast Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).

Plaintiff has the burden of demonstrating his entitlement to the extraordinary remedies he seeks. *See Overstreet v. Lexington–Fayette Urban Cnty. Gov't,* 305 F.3d 566, 573 (6th Cir. 2002). In determining whether to grant or deny emergency injunctive relief, the Court must consider four factors: (1) whether the movant has shown a strong or substantial likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without an injunction; (3) whether issuance of an injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of an injunction. *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689-90 (6th Cir. 2014); *Overstreet*, 305 F.3d at 573 (citing *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)). "These factors are not prerequisites which must be met, but are interrelated considerations that must be balanced together." *Northeast Ohio Coal. for Homeless*, 467 F.3d at 1010 (quoting *Mich. Coal of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). A TRO is an "extraordinary and drastic remedy" and should "only be awarded upon a clear showing that the plaintiff is entitled to such relief." *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 848-49 (6th Cir. 2017) (quoting *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). Further, where a prison inmate seeks an order enjoining state prison officials, this Court must be cognizant of the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432, 438, n.3 (6th Cir. 1984).

*Likelihood of Success on the Merits*

The basis for the majority of Plaintiff's claims, and certainly his request for injunctive relief, is the Eighth Amendment. Inmates have a constitutionally protected right to personal safety

9

grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). Thus, to establish a substantial likelihood of success on his Eighth Amendment claim against a defendant, a plaintiff must present evidence showing the defendant is deliberately indifferent to a known risk of harm. *Farmer*, 511 U.S. at 825; *see also Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992); *Walker v. Norris*, 917 F.2d 1449, 1453–54 (6th Cir. 1990).

A prison official may be held liable for his failure to protect inmates from attacks by other inmates only if he knows that an inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Prison officials must exhibit more than a lack of due care for a prisoner's safety before an Eighth Amendment violation will be found. *Id.* at 835; *Gibson*, 963 F.2d at 853. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. It is not enough that the official "should" have perceived a significant risk, but did not. *Id.*

The deliberate indifference standard is high. "[A] plaintiff must show that the official: (1) subjectively knew of a risk to the inmate's health [or safety], (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010) (citations omitted). "A prison official acts with deliberate indifference when 'he acts with criminal recklessness,' a state of mind that requires that the official act with conscious disregard of a substantial risk of serious harm." *Parra-Soto v. Campbell*, 73 F. App'x 86, 87 (6th Cir. 2003) (quoting *Farmer,* 511 U.S. at 837).

10

"[A] prison's internal security is peculiarly a matter normally left to the discretion of prison administrators." *Rhodes v. Chapman,* 452 U.S. 337, 349 n. 14 (1981). "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547 (1979). Such deference does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires the Court not "freely substitute [its] judgment for that of officials who have made a considered choice." *Whitley v. Albers,* 475 U.S. 312, 322 (1986).

Plaintiff seeks injunctive relief specifically against Defendant Davis, and Defendants Jane Does #1-#3 (Mrs. Sheppard and Mrs. Hupka). (Doc. 14, at 3; Doc. 21, at 1).[4] As Respondent correctly points out, the question for this Court is not whether Defendants are making the correct decision in determining where to house Plaintiff, but whether they acted / are acting with deliberate indifference toward Plaintiff's safety. *See* Doc. 15, at 5.

The Court finds Plaintiff has not demonstrated a strong or substantial likelihood of success on the merits of his claims so as to justify emergency injunctive relief. At this stage of the proceedings, Plaintiff must show he has a "strong likelihood of success", which is "more than a mere possibility of success." *Certified Restoration Dry Cleaning, LLC v. Tenke Corp.*, 511 F.3d 535, 543 (2007). Here, Plaintiff has not demonstrated he is likely to be able to show any particular Defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and also subjectively "dr[ew] the inference." *Farmer*, 511 U.S. at 837. His Amended Complaint contains his own general allegations that he told various individuals he was

---

4. To the extent Plaintiff requests the Court order injunctive relief against ODRC generally or the State of Ohio, the Court agrees with Respondents that to do so would be inappropriate as neither is named as a party to this action.

11

in fear of an attack, and that he was attacked, but it does not contain specifics regarding precisely when or what information he provided or information – other than his own assertions – to establish the attacks were related to his reporting of his rape. Plaintiff's submissions are also devoid of factual allegations to demonstrate the subjective element – that any Defendant was aware of a specific risk at a particular time and consciously disregarded it.

*Irreparable Injury*

Plaintiff contends he will suffer irreparable injury in the form of future attacks if an injunction does not issue. Courts have consistently held that past assaults or past injuries are insufficient to justify emergency injunctive relief. *See, e.g.*, *Basey v. Mooneyham*, 172 F. App'x 582, 584 (5th Cir. 2006) (denying request for preliminary injunction for transfer where prisoner only alleged he had been previously assaulted by prison officials); *Brooks v. Hogan*, 2015 WL 10578929 (N.D.N.Y.) (denying preliminary injunction seeking transfer based on past assaults by prison staff because "a court may not rest a finding of likelihood of future harm . . . based solely on past . . . conduct") (citation omitted) (report and recommendation), *adopted in part and rejected on other grounds*, 2016 WL 1047384; *Cooper v. Bower*, 2017 WL 3389521, at *4 (W.D. Ky.) ("Plaintiff's allegation that 'staff keep assaulting' him and his conclusory statement that 'it is obvious that my life is danger' do not constitute evidence upon which this Court can find that a transfer is warranted on this ground."). Further, Plaintiff's claims of imminent irreparable harm suffer from the same factual deficiencies described above.

*Harm to Others*

The Court finds the "harm to others" factor neutral in the instant case.

*Public Interest*

The Court finds the public interest would not be served by this federal court interfering with the internal operation of a state prison. *See, e.g., Cage v. Harry*, 2010 WL 4683967, at *1 (W.D. Mich.), *report and recommendation adopted sub nom. Cage v. Corr. Med. Servs., Inc.,* 2010 WL 4684000 (W.D. Mich.) ("The public interest would not be served by issuing a preliminary injunction or TRO, and the issuance of either form of relief would constitute unwarranted federal court interference with the State's operation of its prisons.").

Considering the balance of all four factors, the Court finds Plaintiff has not made the required "clear showing" that he is entitled to the "extraordinary and drastic remedy" of a temporary restraining order. *S. Glazer's Distributors,* 860 F.3d at 848-49 (internal quotations and citations omitted).

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Plaintiff's Amended Complaint (Doc. 12-1) is deemed properly filed; and it is

FURTHER ORDERED that Plaintiff's Motion for Appointment of Counsel (Doc. 13), be and the same hereby is, DENIED; and it is

FURTHER ORDERED that Plaintiff's Motions for Temporary Restraining Order (Docs. 14, 21), be and the same hereby are, DENIED.

                         s/ *James R. Knepp II*
                         UNITED STATES DISTRICT JUDGE